UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SANJING YIN,**

                Plaintiff,

vs.

**DELTA AIR LINES, INC.,**

                Defendant.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other civil action pending
in this Honorable Court or any other
Court arising out of the same
transaction and occurrence.

**NOW COMES** Plaintiff, **SANJING YIN**, for her Complaint against

Defendant DELTA AIR LINES, INC., stating the following:

## INTRODUCTION

1.    Plaintiff Sanjing Yin, an individual of Chinese descent, served as Lead

Flight Attendant for Delta Air Lines until she was terminated following an internal

complaint regarding unequal treatment and harassing comments she received based

on her national origin. Plaintiff was singled out for discipline related to company swapping policies and practices due to her national origin while other employees similarly utilized the policies without repercussion. Further, coworkers referred to Plaintiff and other Asian flight attendants as the "Chinese Mafia." Plaintiff complained about her unequal treatment and these racist comments to the base director but the comments were disregarded and Plaintiff was informed that there was nothing about the comments because America is a "free country" (insinuating that she may not understand this being Chinese). Within a few months, Plaintiff would be terminated for pretextual reasons despite no significant prior discipline.

Within this complaint, Plaintiff alleges that she was harassed, disciplined, and terminated in violation of her rights afforded under Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 *et seq.,* 42 U.S.C. § 1981, and Michigan's Elliott-Larsen Civil Rights Act.

## **JURISDICITON AND VENUE**

2.      This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff has raised Federal Claims under 42 USC § 1981 and pursuant to § 706 of Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 *et seq.*

3.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

4.      This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

2

5.     At all times relevant hereto, Plaintiff performed work for Defendants in the Eastern District of Michigan.

6.     The amount in controversy exceeds $75,000, exclusive of costs, interests, and attorney fees.

## PARTIES

7.     Plaintiff Sanjing Yin is an individual who resides in the state of Ohio.

8.     Defendant Delta Air Lines, Inc. ("Defendant" or "Delta") is a foreign profit corporation originally organized under the laws of the State of Delaware. Delta Air Lines, Inc. is registered with the State of Michigan and has a resident agent in East Lansing, Michigan. During her employment with Delta Air Lines, Inc., Plaintiff worked out of the Detroit hub in Wayne County, Michigan.

9.     At all times relevant herein, Defendant acted by and through their agents and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## GENERAL ALLEGATIONS

10.     Plaintiff Sanjing Yin ("Plaintiff") is a member of a protected class as she is an Asian American of Chinese descent.  Although Plaintiff speak fluent English, it is her second language.

11.     Plaintiff is also a member of a protected class due to her familial status as a single mother of two children.

3

12.     Defendant Delta Air Lines, Inc. ("Delta") is major airline in the United States and one of the oldest airlines in the world.

13.     Although Delta is headquartered in Atlanta, GA, it has a hub at Detroit Metropolitan Wayne County Airport ("DTW) in Romulus, Michigan.

14.     Plaintiff began her employment with Delta on or around March 19, 2018.

16.     At all times material hereto, Plaintiff held the position of Lead Flight Attendant at Delta's DTW hub and was supervised by Base Manager Austin Lynch ("BM Lynch").  Plaintiff served as a supervisor to longer flight, including to Europe and Asia.

17.     Plaintiff consistently performed her job diligently and responsibly throughout her employment with Delta.

18.     During her employment with Delta, Plaintiff, as well as Chinese colleagues, were subject to comments and harassment based on their Chinese national origin.

19.     On multiple occasions, Caucasian coworkers referred to the Chinese/Asian flight attendants as the "Chinese Mafia."  Coworkers also insinuated that Plaintiff and other Asian flight attendants get better flight assignments for being part of the "Chinese Mafia."

20.     In one instance, Plaintiff was having lunch with a colleague, Pamela Peters. Upon sitting down with her food, another Caucasian flight attendant, "Debra" questioned Pamela why she ate with Plaintiff proclaiming, "don't you know that [Plaintiff] is part of the China Mafia."

21.     Plaintiff was angry at the comment but was trained not to request anyone be written up unless it was a safety issue.

22.     At Delta, flight attendants are able to utilize a policy and/or practice allowing them to swap and/or pick up shifts from colleagues for various reasons. All flight attendants utilize this policy or practice.

23.     On April 12, 2021, Plaintiff had a meeting with BM Lynch and Director of Scheduling Mark Sweed who questioned Plaintiff on her scheduling habits and some of the swaps she had submitted.  Plaintiff explained that she has utilized swaps because she is a single mother. Plaintiff questioned why she was being singled out as other coworkers do the same thing.  Plaintiff explicitly asked BM Lynch if she had violated any work rules to which he responded "no."

24.     Next, BM Lynch forced Plaintiff to immediately write a statement and stated that she was not allowed to leave the premise until doing so. Plaintiff responded that she needed to return to her home to get her children and requested time to adequately write the statement in English. BM Lynch refused Plaintiff's request to leave.  Plaintiff felt like a prisoner.  Plaintiff questioned BM Lynch if he

singled her out because she is Chinese or Asian. BM Lynch said nothing in response. Ultimately, Plaintiff quickly put together a short statement so she could depart to take care of her children.

25.     Importantly, Plaintiff's use of the swap/pickup policy was not a violation in any way. This was confirmed to her by BM Lynch.

26.     Following the meeting with BM Lynch, Plaintiff submitted a letter questioning Lynch's actions and treatment of her as being discriminatory because she is Asian. *(Exhibit A)*

27.     On May 11, 2021, Plaintiff was called into the office of Delta DTW Base Director Tracy Coram ("BD Coram") and human resources relating to her Plaintiff's complaint of discrimination.

28.     Plaintiff notified BD Coram of her observations that she is being held to a different standard than Caucasian peers who are not Asian in relation to shift policies and practices. Additionally, Plaintiff notified BD Coram that there had been several harassing comments in which coworkers referred to her and other Chinese flight attendants as the "Chinese Mafia." BD Coram responded that "America is a very free country and people can say what they want." Plaintiff responded that she should be free to feel safe and work and her neighbors have never called her "China

Mafia." BD Coram reiterated that America is a "free country" and that people can "say whatever they want" so she can't do anything about it.[1]

29.   Further, BD Coram stated that it is a company policy to lock employees in a room to complete contemporaneous written statements.

30.   On August 2, 2021, Defendants met with Plaintiff for a disciplinary meeting. Notably, the meeting occurred first thing in the morning after Plaintiff was on duty for approximately 12 hours completing an overnight flight. Defendants placed Plaintiff on a startling 36 month probation as a Final Corrective Action and removed her "swapping" privileges for six months and banned her from swapping shifts despite this being Plaintiff's first significant disciplinary action issued. Plaintiff stated that she did not want to sign the write-up as she didn't agree with it. Plaintiff was informed that her signature "only meant that she had read the document." However, when she returned home and reviewed the document it stated that she "agrees and acknowledges" the discipline.  She did not.

31.   Prior to this meeting, Plaintiff was contacted by a colleague who had a medical issue and asked if Plaintiff could pick up her shift. Plaintiff agreed to help and picked up the shift.

---

[1] Following her termination, Plaintiff received her employee file which contained a letter indicating her complaint was investigated and found to be unsubstantiated. Further that the purpose of the meeting with BD Coram was to "close out the investigation and her concern." (***Exhibit B***) This was never communicated to Plaintiff.

32.     On August 8, 2021, Delta placed Plaintiff on a unpaid suspension for allegedly swapping a shift shortly after the August 2nd meeting. However, Plaintiff did not swap a shift as she was merely picking up a shift for an ill colleague.

33.     On September 7, 2021, Plaintiff was notified of her termination.

34.     On information and belief, at least one other Chinese flight attendant was fired at the same time allegedly due to swaps.

35.     On information and belief, Caucasian and other employees not of Asian decent have swapped shifts similar to Plaintiff without any repercussion.

36.     In March 2022, Plaintiff timely filed a charge of  national origin and retaliation with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). On November 29, 2022, The EEOC issued Plaintiff the right to sue under these claims (***Exhibit C***).

## COUNT I
## NATIONAL ORIGIN DISCRIMINATION
## TITLE VII, 42 U.S.C. § 2000e, *et seq*.

37.     All preceding paragraphs are incorporated by reference.

38.     At all relevant times, Plaintiff and Defendant were covered by and within the meaning of the Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*.

39.    Defendant Delta Air Lines, Inc. was Plaintiff's direct employer during her employment.

40.    Plaintiff is a member of a protected class due to her Chinese national origin.

41.    Defendant unlawfully discriminated against Plaintiff due to her national origin.

42.    Defendant discriminated against Plaintiff regarding her compensation, terms, conditions, and privileges of employment due to her national origin.

43.    Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment and termination due to her national origin.

44.    Defendant treated Plaintiff different than similarly situated employees who were not Asian or of Chinese descent/national origin.

45.    Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

46.    Defendant's actions were motivated by favoritism of individuals of not of Chinese ancestry and/or animus towards the national origin of the Plaintiff.

47.    Defendant's conduct and comments, as well as their inaction towards these comments, were severe and pervasive enough to create an objectively hostile or abusive work environment.

48.     Defendant's discriminatory conduct and comments were severe and pervasive enough to interfere with Plaintiff's work performance.

49.     Defendant was aware of the harassment and abuse Plaintiff was facing and failed to act or otherwise inadequately addressed the situation.

50.     The hostile work environment alleged was carried out by and/or were the direct result of the actions of Plaintiff's supervisors and the supervising bodies of Defendant.

51.     Plaintiff alleges that the hostile work environment is in violation of her rights pursuant to 42 U.S.C. § 2000e *et seq.*

52.     Plaintiff's national origin was a factor that made a difference in Defendant's discriminatory decision to discipline and suspend Plaintiff.

53.     Plaintiff's national origin was a factor that made a difference in Defendant's discriminatory decision to terminate Plaintiff's employment.

54.     Plaintiff has obtained her right to sue pursuant to Title VII through the EEOC. (***Exhibit C***)

55.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to

pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT II
## RACIAL DISCRIMINATION
## TITLE VII, 42 U.S.C. § 2000e, *et seq.*

56.     All preceding paragraphs are incorporated by reference.

57.     Plaintiff is a member of a protected class due to her race as an Asian individual.

58.     Defendant unlawfully discriminated against Plaintiff due to her race.

59.     Defendant discriminated against Plaintiff regarding her compensation, terms, conditions, and privileges of employment due to her national origin.

60.     Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment and termination due to her national origin.

61.     Defendant treated Plaintiff different than similarly situated employees who were not Asian.

62.     Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

63.     Defendant's actions were motivated by favoritism of individuals who were not Asian.

64.     Defendant's conduct and comments, as well as their inaction towards these comments, were severe and pervasive enough to create an objectively hostile or abusive work environment.

65.     Defendant's discriminatory conduct and comments were severe and pervasive enough to interfere with Plaintiff's work performance.

66.     Defendant was aware of the harassment and abuse Plaintiff was facing and failed to act or otherwise inadequately addressed the situation.

67.     The hostile work environment alleged was carried out by and/or were the direct result of the actions of Plaintiff's supervisors and the supervising bodies of Defendant.

68.     Plaintiff alleges that the hostile work environment is in violation of her rights pursuant to 42 U.S.C. § 2000e *et seq*.

69.     Plaintiff's race was a factor that made a difference in Defendant's discriminatory decision to discipline and suspend Plaintiff.

70.     Plaintiff's national origin was a factor that made a difference in Defendant's discriminatory decision to terminate Plaintiff's employment.

71.     Plaintiff has obtained her right to sue pursuant to Title VII through the EEOC. (***Exhibit C***)

72.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay,

loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT III**
**RACIAL DISCRIMINATION - 42 U.S.C. § 1981**

73.     All preceding paragraphs are incorporated by reference.

74.     Plaintiff is a member of a protected minority class on the basis of her race.

75.     As an employee, Plaintiff had a contractual employment relationship with Defendant.

76.     During the course of Plaintiff's employment with Defendant, Defendant violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms and conditions of employment "as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981(b), as amended.

77.     Plaintiff was treated differently than her Caucasian comparators and comparators who were not Asian.

78.     Plaintiff was terminated due to her race.

79.     Plaintiff alleges that her termination is in violation of h right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

80.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

**COUNT IV**
**NATIONAL ORIGIN DISCRIMINATION**
**ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***

81.     All preceding paragraphs are incorporated by reference.

82.     At all relevant times, Plaintiff and Defendant were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

83.     Plaintiff is a member of a protected class due to her race and national origin, an individual of Chinese ancestry/national origin.

84.     Defendant's discriminatory conduct and comments were severe and pervasive enough to interfere with Plaintiff's work performance and create a hostile work environment.

85.     Defendant took no action based on this discriminatory conduct even though it received complaints from Plaintiff about the harassment and hostile work environment.

86.     Plaintiff's national origin was a factor that made a difference in Defendants' discriminatory decision to discipline and suspend Plaintiff.

87.     Plaintiff's national origin was a factor that made a difference in Defendants' discriminatory decision to terminate Plaintiff's employment.

88.     Defendant treated Plaintiff different than similarly-situated employees who were not of Chinese ancestry/national origin.

89.     Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

90.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT V
## RETALIATION - TITLE VII, 42 U.S.C. § 2000e

91.     All preceding paragraphs are incorporated by reference.

92.     Plaintiff engaged in activity protected by Title VII, 42 U.S.C. § 2000e *et seq.* when she complained of unequal treatment and harassment based on her national origin.

93.    Defendant failed to investigate Plaintiff's complaints of harassment and discrimination.

94.    Defendant failed to take remedial measures with respect to the discrimination and harassment for which Plaintiff was subjected to.

95.    Because she engaged in this protected activity, Plaintiff was subjected to adverse employment actions, including, but not limited to, discipline and termination.

96.    Defendant terminated Plaintiff in retaliation of her protected activity.

97.    Defendant's retaliatory actions violate Title VII, 42 U.S.C. § 2000e *et seq.*

98.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VI
## RETALIATION - 42 U.S.C. § 1981

99.    All preceding paragraphs are incorporated by reference.

100.   Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when she complained of the racial discrimination and harassment she was subjected to in the workplace.

101.   Defendant retaliated against Plaintiff due to this protected activity.

102.   Defendant began holding Plaintiff's performance to a different standard in retaliation for this protected activity.

103.   Defendant terminated Plaintiff in retaliation of Plaintiff's protected activity.

104.   Defendant's termination of Plaintiff's employment on this basis violates 42 U.S.C. § 1981.

105.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

**COUNT VII**
**RETALIATION**
**ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***

106.   All preceding paragraphs are incorporated by reference.

107.    Plaintiff engaged in protected activity when she reported actual or perceived discrimination and harassment, she was being subjected to in the workplace due to her national origin.

108.    Defendant disciplined Plaintiff due to her protected activity.

109.    Defendant terminated Plaintiff in retaliation of her protected activity.

110.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VIII
## DISCRIMINATION ON THE BASIS OF FAMILIAL STATUS
## ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

111.    All preceding paragraphs are incorporated by reference.

112.    Plaintiff is a member of a protected class due to her familial status as the single mother of a small child.

113.    Defendant held Plaintiff to a different standard due to her familial status.

114.   Plaintiff's familial status was a factor that made a difference in Defendant's decision to discipline and terminate Plaintiff.

115.   Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

116.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.   Declare that the aforementioned practices and actions of Defendant constitutes unlawful practices in violation of Title VII, 42 USC 1981, and ELCRA;

b.   Award Plaintiff all lost wages and benefits, past and future, to which she is entitled;

c.   Award Plaintiff appropriate equitable relief;

d.   Award Plaintiff compensatory damages;

e.   Award Plaintiff punitive damages;

f.   Award Plaintiff reasonable attorney fees, costs and interest; and

g.    Award such other relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

DATE: December 5, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SANJING YIN,**

Case No.

Plaintiff,

vs.                                                     Hon.

**DELTA AIR LINES, INC.,**

Defendant.
_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

_____/

## DEMAND FOR TRIAL BY JURY

Plaintiff Sanjing Yin hereby demands for a trial by jury.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

DATE: December 5, 2022